**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILL COUNTY RECYCLING, INC.,,**<br><br>Defendant. | FILED: JUNE 23, 2008<br>08CV3586<br>JUDGE MANNING<br>MAGISTRATE JUDGE NOLAN<br>YM<br><br><br>Case No. |

## COMPLAINT

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), and plaintiff James S. Jorgensen ("Jorgensen"), Administrator of the Funds, by their undersigned attorneys, and for their Complaint against Defendant Will County Recycling, Inc., as follows:

### COUNT I

### (Failure To Pay Employee Benefit Contributions)

1. Jurisdiction is based on Sections 502(e)(1) and (2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1132(e)(1) and (2); Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a); and 28 U.S.C. §1331.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391(a) and (b).

3. The Funds are multiemployer benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). The Funds have offices, conduct business and administer the plans within this District. Jorgensen is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer

contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4. Defendant Will County Recycling, Inc. (hereinafter "The Company"), is an Illinois corporation in good standing. The Company does business within this District and is an Employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of LMRA, 29 U.S.C. §185(a).

5. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company are parties to a collective bargaining agreement ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company, which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A.)

6. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation & Education Trust ("LECET"), [the Contractors' Association of Will and Grundy Counties (the "Will County Fund"), the Concrete Contractors' Association of Greater Chicago ("CCA"), and the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), to act as an agent in the collection of contributions due to those funds.

7. The Agreement obligates the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies

2

the employees covered under the Agreement and the amount of contributions to the Funds remitted on behalf of each covered employee.

8. The Agreement further obligates the Company to cooperate with auditors designated by the Funds in conducting payroll audits to assure that all required contributions have been made to the Funds.

9. The Agreement further obligates the Company to procure, carry and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions for the duration of the Agreement.

10. Notwithstanding the obligations imposed by the Agreement, the Company has:

(a) failed to report contributions owed to plaintiff Laborers' Pension Fund in November 2007 to the present, and failed to pay contributions to said Fund in November 2007 to the present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries; and

(b) failed to report all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity in November 2007 to the present, and the pay contributions due to said Fund from in November 2007 to the present, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries; and

(c) failed to report and pay all contributions owed to Laborers' Training Fund in from November 2007 to the present, thereby depriving the Laborers' Training Fun of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries.

(d) failed to maintain a surety bond to guarantee the payment of wages, Pension and Welfare contributions.

(e) failed to pay ten percent damage penalties.

11. Despite demand duly made, the Company has not paid the required contributions or other sums due.

12. All conditions precedent to requiring contributions and reports to the Funds have

been met.

13. The Company's actions in failing to make timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

14. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), and the terms of the Funds' Trust Agreements, the Company is liable to the Funds for unpaid contributions and related amounts, as well as interest and liquidated damages on the unpaid contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Will County Recycling, Inc., for the amounts of contributions owed to date together with all accrued delinquencies after suit, interest, liquidated damages, attorneys' fees and costs, directing the Company to obtain and maintain a surety bond to guarantee payment of wages, Pension and Welfare contributions as required by the Agreement, and an order directing Defendant to timely submit reports and upon demand by Plaintiffs submit to an audit, and any other legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

14. Plaintiff realleges paragraphs 1 through 9 of Count I.

15. Pursuant to the Agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been deducted from the wages of covered employees.

16. Notwithstanding the obligations imposed by the Agreement, the Company has failed to withhold and/or to report to and forward the union dues deducted or the Union dues that should have been deducted from the wages of employees for November 2007 to the present, thereby depriving the Union of income.

17. Pursuant to the Agreement, the Company is liable to the Fund for the unpaid union dues, as well as reasonable attorneys' fees, as the Union's collection agent, and costs, and such other legal and equitable relief as the Court deems appropriate.

18. The Company's actions have violated and are violating Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant, Will County Recycling, Inc. for the amount of the union dues owed to date together with all attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

By: _____
Attorneys for Plaintiff

Wesley Kennedy
Karen I. Engelhardt
Angie Cowan
Josiah A. Groff
ALLISON, SLUTSKY & KENNEDY, P.C.
230 West Monroe Street, Suite 2600
Chicago, Illinois 60606
(312) 364-9400

June 20, 2008



# CONSTRUCTION & GENERAL LABORERS
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8283 • FAX: 630/655-8283

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **WILL COUNTY RECYCLING INC** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 502, 681, 1001, 1035, 1092, together with any other Local Unions that they come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborers' bargaining unit with respect to wages, hours and other terms and conditions of employment. If majority recognition previously was granted under Section 9(a) of the Act it shall remain in effect. Otherwise, recognition under Section 9(a) of the Act shall be granted to the Union automatically without the need for a Board certified election upon the Union's demonstration that a majority of the employees have designated the Union as their exclusive bargaining representative. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension hereof, without written approval from the Union. The Employer shall abide by this Agreement, and all extensions hereof, provided that it employs at least one Laborer during the term of this Agreement or the term of any extension hereof.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Wall Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Gypsum Drywall Contractors of Northern Illinois/Chicagoland Association of Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreements).

3. **Total economic Increase.** The Employer shall pay the employees a total economic increase of $2.50 per hour effective June 1, 2006, $3.00 per hour effective June 1, 2007, $3.00 per hour effective June 1, 2008 and $3.10 per hour effective June 1, 2009, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2006, the minimum wage rate shall be $31.55 per hour.

4. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in the amount of 1.75% of gross wages or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. If the Employer contracts or subcontracts any such covered work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payment to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund. The Employer shall further assume the obligations of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefits Education Trust, the LDC/LMCC, and to all other dedicated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer ratifies and confirms the appointment of the employer trustees who shall, together with their successor trustees, carry out the terms and conditions of the trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper times and rates, and evidences the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce this award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2006 (unless dated differently below) through May 31, 2010, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new applicable association agreement, incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept the facsimile signatures on this Agreement as if they were the original signatures.

Dated: **SEPT. 25, 20 06**

ACCEPTED:
Laborers' Local Union No. **225**

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Frank Riley, President & Secretary-Treas.

For Office Use Only: **CDLA**

Effective June 1, 2006

**WILL COUNTY RECYCLING** (Employer)
FEIN No. **74-315 8894**

By: **Jack Gasci V.P.**
(Print Name and Title)

_____ (Signature)

**2514 Douglas** (Address)

**Joliet IL 60436**
(City, State and Zip Code)

**815-741-9113 FAX**
(Telephone/Telefax)

WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

---

**Exhibit A**